## Howard v. Commonwealth.

(Decided May 21, 1926.)

## Appeal from Magoffin Circuit Court.

1.  Homicide—Instruction to Find Defendant Guilty of Involuntary Manslaughter, if Jury was in Doubt as to Degree of Guilt, though Incorrect, Held More Favorable to Defendant than he Had Right to Demand.—Instruction in homicide prosecution, though incorrect in telling jury to find defendant guilty of involuntary manslaughter, if they had reasonable doubt of degree of his guilt, held not prejudicial, as it was more favorable to defendant than he had right to demand.

2.  Criminal Law—Witnesses.—Admission of evidence that defendant's witness said he did not know how killing happened, and did not get there until after it happened, offered by Commonwealth to contradict evidence of defendant's witness, held error, but not to have prejudiced defendant's substantial rights.

H. H. RAMEY and W. R. PRATER for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE GOODPASTER—Affirming.

Appellant, upon indictment in the Magoffin circuit court charging him with the murder of John Morgan Shepherd, was found guilty by the jury of voluntary manslaughter; thereupon it was adjudged that he be confined in the penitentiary for a period of five years. He appeals. The facts are very brief.

In February, 1924, on Sunday, appellant Kelly Howard, the deceased, John Morgan Shepherd, Brice Shepherd, Amos Wireman and "Little" Joe Wireman met at or near the home of the latter, near or at the mouth of Molly's branch; they remained there probably an hour or so when appellant Kelly Howard, John Morgan Shepherd, Brice Shepherd and Amos Wireman took their leave, going up Molly's branch. John Morgan Shepherd and Brice Shepherd walked to "Little" Joe Wireman's; Kelly Howard and Amos Wireman each rode a mule; on leaving Brice Shepherd rode on the mule behind Kelly Howard and John Morgan Shepherd rode on the mule behind Amos Wireman; they traveled about three-quarters of a mile and arrived at what is called by the wit-

nesses "an old waste house." One of the parties proposed that they go in the old house and build a fire, to which the others assented, and after entering the house and building a fire each of them drank some whiskey. They had drunk a little whiskey before that time while at Little Joe Wireman's; they remained there for an hour to an hour and a half and left riding in the same manner as above stated, still going up Molly's branch; Amos Wireman and John Morgan Shepherd were in front of Kelly Howard and Brice Shepherd; they were so close together that the nose of the rear mule almost touched the tail of the front mule. While so traveling appellant Kelly Howard drew his pistol and it fired twice, the two shots very close together.

Brice Shepherd was introduced as a witness for the Commonwealth and testified in part as follows: "We rode on and Kelly took another drink right at his home; he pulled his pistol out and throwed her right that way (demonstrating) and fired two shots." And was then asked these questions:

"Q. Did he point it at anybody? A. Yes, sir.

"Q. At whom? A. Morgan Shepherd.

"Q. Who were you riding behind? A. Kelly Howard.

"Q. Did he shoot at a tree? A. No, sir.

"Q. What happened to John Morgan? A. He said, 'Lord have mercy, I am killed,' and fell off.

"Q. After he fell off what happened? A. Kelly rode on up and talked awhile, then come back to where I was and said if I wanted anything else I would get it.

"Q. What did you do when he fell off? A. I run to see if he was killed.

"Q. Did he make any statement? A. No, sir.

"Q. Did he die there? A. Yes, sir.

"Q. Did he have anything in his hand? A. Had his pistol.

"Q. Anybody else come? A. In about ten minutes Woodlow Howard.

"Q. Where from? A. The Big branch way.

"Q. Was he there about the time your brother was killed? A. He was not.

"Q. How long afterward? A. About ten minutes."

Appellant testified in part as follows: That when they left the old house they went out and got on their mules. He was then questioned as follows:

"Q. After you got up Molly's branch near your home, what happened? A. We rode along up near my house; there is a walnut tree beside the road; Amos' mule was just in front of me; I aimed my pistol at the walnut tree and shot and my mule wheeled and I grabbed to catch the pistol in my hand and it went off again and shot my friend in the back.

"Q. You had nothing against him? A. Not a thing.

"Q. Did you have any intention of shooting him? A. No, sir.

"Q. Ever have a fight or racket with him? A. Never did.

"Q. Ever have any hard feelings? A. No, sir; we were raised up together.

"Q. What relation? A. Said to be cousins.

"Q. About how far in front of your mule was the mule which Amos and John Morgan rode? A. My mule's nose was touching their mule's tail.

"Q. Did Brice attempt to hold you? A. No, sir.

"Q. When the mule wheeled around and the second shot was fired, what did Morgan Do? A. He said, 'Lord have mercy, I am killed,' and I said, 'Lord have mercy, I reckon not.'

"Q. Did he fall off? A. Yes, sir.

"Q. What did you do? A. I jumped off.

"Q. Where did you leave your mule? A. Standing.

"Q. Did you go to him? A. I went over and lifted up his head and said, 'Lord have mercy, Brice, he is killed, and I wouldn't have done it for the world,' and I told Brice if he thought I did it on purpose to take my pistol and shoot my brains out.

"Q. Did he refuse to take it? A. He shook his head."

And then stated that the body was taken to his house and laid on the bed.

Amos Wireman was introduced as a witness and testified in part as follows: That he remembered the day John Morgan Shepherd was killed; that on the morning

of that day he saw Kelly Howard, Morgan and Brice Shepherd at Joe Wireman's; after staying there awhile we left and went up Molly's branch; John Morgan Shepherd rode behind me and Brice Shepherd rode behind Kelly; when we got to the waste house we got down and built a fire; we drank some there; we stayed there awhile and then went up the creek.

He was then asked these questions:

"Q. Was your mule before or behind? A. We were in front. Q. What happened up near Kelly's house? A. A couple of shots was fired. Q. Did you see them fired? A. No, sir. Q. Tell the jury what you know about it. A. We got up pretty close to Kelly's house and I heard a shot and in a second heard another. Q. In rapid succession? A. Little bit between them—not very much. Q. (By the judge): Indicate on your hands how close together? A. Something like a second or two."

He was then asked the following questions:

"Q. What happened? A. We rode a step or two and Morgan fell off. Q. What did you do? A. Rode out and hitched up and went back. Q. What did Kelly do? A. Went to John Morgan. Q. What did Kelly say? A. Morgan said. 'Lord have mercy you shot me,' and Kelly said 'Lord, I reckon not,' and Kelly got off and went to him and commenced crying. Q. If Kelly said anything to Brice there, tell what he said. A. I can't remember what all they said.

"Q. To refresh your recollection did he say anything to him about Brice taking his (Kelly's) pistol and shooting him with it? A. 'Pears like he said something like that.

"Q. What did you do then? A. We packed him in.

"Q. Did Kelly go in too? A. Yes, sir."

The affidavit of Woodlow Howard was read as his evidence and in part is as follows: "I am a brother of Kelly Howard's; on the day John Morgan Shepherd was killed I was coming on across the hill from up the Licking country over on to the Molly's branch. Just below the residence of Kelly Howard I observed Kelly Howard, John Morgan Shepherd, Amos Wireman and Brice

Shepherd riding up Molly's branch; they were riding two mules; Amos Wireman and John Morgan Shepherd were in front and Kelly Howard and Brice Shepherd were behind; Amos was riding in the saddle with John Morgan Shepherd behind him; the mule Kelly Howard and Brice Shepherd was riding was about two mule lengths behind the other mule. I saw Kelly Howard aim his pistol at a small walnut tree on the right-hand side of the road and fire. When the pistol cracked, the mule that he and Brice Shepherd was riding jumped, wheeled around and came very near throwing Kelly and Brice off. I saw Kelly attempt to catch to the horn of the saddle and as he done this the pistol fired again. At this time John Morgan Shepherd cried out that he was killed, and Kelly said, 'Lord have mercy, I reckon not.' John Morgan Shepherd then fell from his mule and Kelly jumped off of his mule and ran to him and he died without ever speaking. Kelly turned to Brice Shepherd and said, 'Brice, this was an accident, but if you believe it was done on purpose take my pistol and kill me with it.' Kelly suggested that we carry John Morgan into his house, and Brice said no, and Kelly said to go and tell your mother what has happened and Brice went on and Kelly Howard, Amos Wireman and myself carried the deceased into the home of Kelly Howard.''

Abe Shepherd was introduced as a witness in rebuttal and testified in part as follows:

"Q. You are a brother of John Morgan Shepherd? A. Yes, sir.

"Q. You know Woodlow Howard? A. Yes, sir.

"Q. Did you have a conversation with him relative as to how John Morgan Shepherd was killed? (Defendant objects; court overrules; defendant excepts.) A. Yes, sir.

"Q. Did he say whether or not he was present? (Defendant objects; court overrules; defendant excepts.) A. Said he did not know how it happened.

"Q. Did he tell you where he was at the time it happened? A. Coming across the hill.

"Q. How long until he got down there? A. About twenty minutes.''

Joe Joseph was introduced as a witness for the Commonwealth and testified in part as follows: That a short time before the killing he had a conversation with Kelly

Howard about John Morgan Shepherd on Molly's branch; that he told witness about having some trouble with John Morgan, and was then asked the following questions:

"Q. What did he say about John Morgan Shepherd? A. He said he shot at him that night.
"Q. Say anything more about it? A. Well, he said if Morgan Shepherd came around his children drunk he would kill him if it took ten years.
"Q. Did he say whether he tried to kill him? A. Didn't say whether he tried it at that time or not."

On cross-examination he was asked the following questions:

"Q. Now, who did you see to tell what you knew about this? A. I told his brother while we were in jail at Prestonsburg. Q. You have been in jail at Prestonsburg and you are now in jail here? A. Yes, sir."

The court gave instructions upon murder, voluntary manslaughter, involuntary manslaughter, killing by accident, the usual instruction as to reasonable doubt as to defendant being proven guilty, and also gave the following instruction:

"If you find the defendant guilty and have any reasonable doubt as to whether he is guilty of murder, voluntary manslaughter or involuntary manslaughter, you will find him guilty of the smaller offense, involuntary manslaughter, and fix his punishment accordingly."

This instruction, while technically incorrect, in that it told the jury to find the appellant guilty of involuntary manslaughter if they had a reasonable doubt of the degree of his guilt, whereas it should have told them to find him guilty of that degree of the offense of which they believed, beyond a reasonable doubt, he was guilty, yet the instruction as drawn was more favorable to appellant than he had a right to demand, and hence its form was not prejudicial.

The court erred in overruling defendant's objection to the evidence of Abe Shepherd offered by the Commonwealth to contradict the evidence of Woodlow Howard, but in our opinion the substantial rights of the defendant

were not prejudiced thereby. The other instructions given by the court were substantially correct. The jury heard the evidence and as above stated found the defendant guilty of voluntary manslaughter.

It is our opinion that the judgment appealed from should be and it is affirmed.